UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

MELINDA CAROL KELLY,

    Debtor.                                                                                        No. 7-11-15178 TS

FRANK R. TRUJILLO and
IDA J. TRUJILLO,

    Plaintiffs,

v.                                                                                                      Adv. No. 12-1136 T

MELINDA C. KELLY, personally
and as personal representative
of the estate of Bruce Kelly, dba
KELLY PROPERTIES, LLC,

    Defendants.

## MEMORANDUM OPINION

In this adversary proceeding plaintiffs seek a judgment that the debtor's obligation to them is nondischargeable. Plaintiffs are pro se and did not specify the basis for the requested nondischargeability judgment. The Court tried the adversary proceeding on November 13, 2012, heard the testimony of Debtor and Plaintiffs, and reviewed all admitted exhibits.

This is a core matter. The Court has considered the evidence and has made an independent inquiry into applicable case law. Being sufficiently advised, the Court issues the following Memorandum Opinion. For the reasons set forth below, the Court finds in favor of Debtor and will enter judgment accordingly.

### I.    FACTS

The Court finds the following facts:

1.    Debtor filed the above-captioned bankruptcy case November 30, 2011.

2. Debtor and Bruce Alan Kelly were husband and wife prior to Mr. Kelly's death on March 11, 2011.

3. Before November 12, 2002, Plaintiffs owned certain real property in Taos County, New Mexico, generally described as follows:

> Tracts T, G. Q, and R in Section 11 and 12, Township 25 N, Range 12 E, located on Blueberry Hill Road and in Lower Las Colonias,

(the "Property").

4. Plaintiffs mortgaged the Property to Kenneth Goldberg & Associates, P.A. Retirement Trust ("Goldberg").

5. Plaintiffs defaulted on their obligations to Goldberg, and in 2000 Goldberg filed a foreclosure action, which resulted in a special master's sale of the Property.

6. Goldberg was the successful bidder at the sale and received a special master's deed for the Property on or about November 12, 2002.

7. On May 20, 2003, Plaintiffs and the Kellys entered into an agreement pursuant to which, inter alia, Plaintiffs transferred their redemption rights in the Property to the Kellys (the "2003 Agreement").

8. The Kellys apparently used the redemption rights to purchase the Property from Goldberg for $170,000. The purchase closed July 9, 2003.

9. The Kellys financed the purchase with a $180,000 loan from Peoples Bank, secured by a mortgage on the Property (the "Purchase Money Mortgage").

10. On May 5, 2004, Plaintiffs and the Kellys entered into a new agreement (the "2004 Agreement") that superseded the 2003 Agreement. Under the 2004 Agreement, the Kellys agreed to convey to Plaintiffs a certain portion of the Property, denoted "Tract Q" and one

-2-

acre in "Tract R" (together, the "Reconveyance Property"), upon the satisfaction of certain conditions.

11. The primary condition to the Kellys' obligation to convey the Reconveyance Property to Plaintiffs was that all debts encumbering the Property had to be paid off.

12. Initially, the only debt encumbering the Property was the Purchase Money Mortgage.

13. Plaintiffs' understanding of the 2004 Agreement was that once the Purchase Money Mortgage had been paid, the Kellys would convey the Reconveyance Property to Plaintiff. Further, Plaintiffs' understanding was that the Kellys would not encumber the Property except for the Purchase Money Mortgage.

14. Mr. Kelly apparently had a different understanding, because instead of paying off the Purchase Money Mortgage, between 2004 and 2009 he borrowed an additional $1,600,000 (more or less) and executed new mortgages on the Property securing both the original purchase money loan and the new borrowings.

15. It does not appear that the Kellys ever sold any of the Property or otherwise made enough money from the Property to pay off the Purchase Money Mortgage, let alone the increased borrowings.

16. The Kellys built a condominium on a portion of the Property, financed with a portion of the new borrowings.

17. In 2008, Mr. Trujillo signed a half-page "Loan Agreement" in favor of Mr. Kelly, acknowledging a loan of $1,500, along with prior debt of $7,644.16 (for a total debt of $9,144.16), agreeing to pay this amount plus 8% interest within four years, and agreeing that if

-3-

the debt was not repaid by the four-year deadline, Plaintiffs would forfeit all claims to the Reconveyance Property. Mrs. Trujillo did not sign the "Loan Agreement."

18. Plaintiffs never paid the $9,144.16 plus interest, or any portion thereof.

19. After Mr. Kelly's death, Peoples Bank foreclosed its mortgage on the Property. The total amount owing to Peoples Bank in mid-2012 was about $1,450,000.

20. Mr. Kelly was an attorney, and he represented Plaintiffs in a number of matters, although not in either the Goldberg or the Peoples Bank foreclosure actions.

21. During the relevant time periods, Debtor worked as a travel agent in Taos, New Mexico.

22. Debtor was not involved in negotiating the 2003 Agreement or the 2004 Agreement, had no fiduciary duties to Plaintiffs, and made no representations to Plaintiff.

23. Debtor did not have an understanding of the "deal" between the parties on the issues relating to the debt encumbering the Reconveyance Property. Debtor simply signed the subject agreements after they had been negotiated by Mr. Kelly and Plaintiffs, and drafted by Mr. Kelly.

## II. DISCUSSION

A. <u>Nondischargeability Claim Based on Debtor's Conduct</u>. There is no evidence upon which the Court could make a finding that Plaintiffs' claim against Debtor is nondischargeable, under any provision of 11 U.S.C. § 523. In particular, Plaintiffs did not prove that Debtor made any representations to Plaintiffs, defrauded Plaintiffs, owed any fiduciary

-4-

duties to Plaintiffs; or willfully or maliciously injured any of Plaintiffs' property. Furthermore, Plaintiffs did not present any evidence of the amount of the alleged nondischargeable claim.[1]

      B.    <u>Nondischargeability Claim Based on Mr. Kelly's Conduct</u>.  Except for the community discharge issue discussed below, the law is clear that the wrongdoing of one spouse cannot be imputed to the other, innocent spouse for nondischargeability purposes. *See In re Bruton*, 2011 WL 6148702, *5-7 (Bankr. D.N.M. 2011) (absent a business partnership relationship, innocent spouse cannot be held responsible for alleged misrepresentations of allegedly guilty spouse); *In re Aguilar*, 2009 WL 146155, *1 (Bankr. D.N.M. 2009) (same); *Midtown Insurance, LLC et al v. Steven J. Peterson et al (In re Peterson),* Memorandum Opinion, Adv. No. 08-1042 (Bankr. D.N.M. 2009); *Markey v. Sanchez (In re Sanchez)*, Memorandum Opinion, Adv. No. 03-1222 (Bankr. D.N.M. 2004).  Thus, Plaintiffs cannot obtain a nondischargeability judgment against Debtor based on Mr. Kelly's alleged wrongful conduct. Furthermore, as set forth below, Plaintiffs did not prove that Mr. Kelly engaged in any wrongdoing sufficient to warrant a nondischargeability finding.

      C.    <u>The Community Discharge</u>.  If one spouse files bankruptcy and the other does not, all community property goes into the filing spouse's bankruptcy estate. 11 U.S.C. § 541(a)(2).  In the typical case, the resulting bankruptcy discharge prevents pre-petition community creditors from collecting against after-acquired community property.  11 U.S.C. § 524(a)(3).  However, if a creditor holds a claim against the nonfiling spouse that would have been nondischargeable had such spouse filed bankruptcy, then the creditor may seek an order that the discharge entered in the innocent filing spouse's case will not prevent collection of the

---

[1] In his closing argument Mr. Trujillo mentioned a possible value of the Reconveyance Property, but he gave no basis for the estimate, and in any event the value is not part of the trial evidence.

-5-

Case 12-01136-t    Doc 26    Filed 11/20/12    Entered 11/20/12 08:54:10 Page 5 of 7

debt from after-acquired community property. *See Midi Music Center, Inc. v. Smith (In re Smith)*, 140 B.R. 904, 907 (Bankr. D.N.M. 1992) (if, hypothetically, the nondebtor spouse would not receive a discharge, then after-acquired community property will be liable for the community claim); *FDIC v. Soderling (In re Soderling)*, 998 F.2d 730, 734 (9th Cir. 1993) (to the same effect); *Arcadia Farms Ltd. v. Rollinson (In re Rollinson)*, 322 B.R. 879, 883 (Bankr. D. Ariz. 2005) (to the same effect). *See generally* Joann Henderson, For Better or Worse: Liability of Community Property after Bankruptcy, 29 Idaho L. Rev. 893, 898 (1992) (both spouses must be innocent in order to gain a community discharge).

In this case, Mr. Kelly pre-deceased Debtor. There is therefore no possibility of after-acquired community property. Because of that, the Court need not determine whether Plaintiffs' claim against Mr. Kelly in a hypothetical bankruptcy case would have been nondischargeable.

To the extent a determination is necessary, furthermore, the Court finds that Plaintiffs did not carry their burden of proof. Plaintiffs did not prove, inter alia, the amount of their claim; that the 2004 Agreement required the Mr. Kelly to pay off the Purchase Money Loan rather than roll it over; that the 2004 Agreement prohibited Mr. Kelly from pledging the Reconveyance Property as collateral for additional loans related to development of the Property; whether Mr. Kelly could have paid off the Purchase Money Mortgage if he had wanted to do so; whether paying off the Purchase Money Mortgage and conveying the Reconveyance Property was consistent with the development plan for the Property; or that Mr. Kelly made misrepresentations of fact to Plaintiffs. The Court therefore finds that Plaintiffs' evidence is not sufficient to prove any § 523(a) claim against Mr. Kelly.

Case 12-01136-t    Doc 26    Filed 11/20/12    Entered 11/20/12 08:54:10 Page 6 of 7

### III. CONCLUSION

The Debtor will be granted a discharge without exceptions. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate judgment will be entered.

                              Hon. David T. Thuma,
                              United States Bankruptcy Judge

Entered on the docket: November 20, 2012.

Copies to:

Clifford C. Gramer, Jr.
3733 Eubank Boulevard NE
Albuquerque, NM 87111

Frank Trujillo
Ida Trujillo
5302 Sydney Street
Las Vegas, NM 87701

-7-